UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
F I L E D
DEC 29 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-197-GWU

RONNIE RUSSELL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Russell

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Russell

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Russell

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Ronnie Russell, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of post-traumatic right leg shortening, left ankle pain, and back pain. (Tr. 24). Nevertheless, the ALJ determined that Mr. Russell retained the residual functional capacity to perform a full range of "medium" level work, and proceeded to apply Rule 203.18 of the Commissioner's Medical-Vocational Guidelines (the "grids") applicable to a person "closely approaching advanced age," with a limited education or less and unskilled work experience, which directs a conclusion of "not disabled." (Tr. 27-8). Accordingly, he was not entitled to benefits. The Appeals Council declined to review, and this action followed.

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff submitted evidence of a left ankle fracture which required a closed reduction and reconstruction of the medial and lateral morteus in March, 2002. (Tr. 122). By July, 2002, the treating surgeon noted continued moderate swelling and pain, a moderate limp, and a fracture line still visible on x-ray, but "healing OK." (Tr. 120-1). No functional restrictions were suggested, and the plaintiff apparently had no follow-up. He had no other treatment for physical problems after his alleged onset date in 1999.

7

The only other physical examination after the onset date was by a consultative physician, Dr. Wayne Page, who examined Mr. Russell on March 6, 2003. (Tr. 126). Among other items, Mr. Russell noted that his right leg had been injured and shortened by a gunshot wound in the femur in 1974, and Dr. Page measured the right leg as being 10 centimeters shorter than the left leg. (Tr. 126,129). Mr. Russell also complained of back pain, and described his left ankle injury, which he described as "healing," and for which he had not had treatment for seven to nine months. (Tr. 126). He related that he had been hospitalized for chest pain approximately four years earlier, and a heart catheterization had showed a 40 percent blockage of an artery; it was recommended that he stop smoking, and he declined an offer of angioplasty. (Id.).[1] He had no follow-up for this condition, either, and continued to smoke approximately one pack of cigarettes a day. (Tr. 126-7). He described shortness of breath, which he had been told was related to smoking. (Tr. 127). Dr. Page described his examination of the plaintiff as showing relatively few abnormalities, noting, for instance, normal gait and posture despite the

---

[1] Medical records from the University of Tennessee hospital show that Mr. Russell was discharged on September 10, 1998 after being admitted for chest pain and tightness in the throat. (Tr. 158). A catheterization did show 40 to 50 percent stenosis in some arteries, but "no critical stenoses." (Id.). Hemodynamics were normal, and there were no negative consequences to a "clinical diagnosis" of pericarditis. (Tr. 166-7). He was advised to undergo "vigorous risk factor modification to prevent progression of moderate coronary artery disease," and use nonsteroidal anti-inflammatory drugs for the pericarditis. (Id.). No recommendation for angioplasty or other procedures appears to have been made, and no functional restrictions were given.

discrepancy in leg length. (Tr. 128-9). Mr. Russell did not use an assistive device; he was able to walk on his heels and toes and tandem walk "with difficulty." (Tr. 128). Grip testing was invalid, and the physician noted "poor effort" when he asked the plaintiff to touch his toes. (Id.). Dr. Page felt that Mr. Russell was intentionally trembling, which he described as factitious pain behavior. (Tr. 128-9). The only abnormality in range of motion testing of the joints was reduced forward elevation of the right shoulder. (Tr. 128). Dr. Page concluded that he believed the plaintiff could lift 25 pounds "frequently/occasionally," could stand, walk, and sit eight hours in an eight-hour day "with usual breaks," and would have "no impairments related to hearing, speaking, vision, [and] traveling." (Tr. 129).

A state agency physician, Dr. Andrew Miller, reviewed the record and concluded that the plaintiff could lift 50 pounds occasionally and 25 pounds frequently, could sit, stand, and walk about six hours in an eight-hour workday, and would "occasionally" be able to balance and stoop. (Tr. 131-5).

Clearly, the ALJ's finding that the plaintiff was capable of medium level exertion is inconsistent with the one examining source to express an opinion, Dr. Page, who limited Mr. Russell to lifting only 25 pounds. Although the reviewer, Dr. Miller, provided a summary of the evidence (Tr. 132), he did not state why his opinion differed from the treating source, making his opinion inadequate to serve as substantial evidence to overcome the opinion of the examining source. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Moreover, although the ALJ correctly

Russell

noted in his decision that the opinions of state agency medical consultants must be considered and weighed as those of highly qualified physicians (Tr. 26), see 20 C.F.R. Section 404.1527(f)(2)(i), he made no mention of Dr. Miller's opinion, much less provided any evidence of having considered or weighed it. Assuming for the sake of argument that he would have been entitled to accept Dr. Miller's opinion over that of Dr. Page, Dr. Miller listed non-exertional restrictions in balancing and stooping which are inconsistent with a full range of medium level work. Social Security Ruling 85-15, pp. 6-7. Thus, the use of the grids was improper.

Therefore, a remand will be required for further consideration of the plaintiff's functional capacity. At that time, new evidence submitted to the Appeals Council (Tr. 209-21) and other new evidence that the plaintiff may care to submit can be considered by the ALJ. For the reasons stated in the Commissioner's brief regarding the plaintiff's failure to show an inability to ambulate effectively, the plaintiff's arguments that he currently has established satisfaction of Listings of Impairment Sections 1.02 or 1.06 are without merit.

The decision will be remanded for further consideration.

This the 29 day of December, 2005.

G. WIX UNTHANK
SENIOR JUDGE